Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is No. 23-1412, Mariano Ortiz Trejo v. Pamela J. Bondi. At this time, would counsel for the petitioner please introduce himself on the record to begin. Good morning, Your Honors. May it please the Court, Randy Olin for Mr. Ortiz Trejo. May I please reserve two minutes for it? You may. Good morning. Thank you. Your Honor, in April this Court decided Contreras v. Bondi, Judge Lopez's decision, and it vacated a BIA decision in which the Board had denied cancellation of a removal based on the supposed failure to satisfy the hardship standard. The decision expounded two fundamental principles in the cancellation of a removal context. The first is that if you overlook evidence that is important to the determination, that's an error of law. The second principle that was espoused in the decision is that a serious mischaracterization of the evidence may also constitute an error of law, requiring obviously vacate. The exact quote is, when some facts important to the subtle determination of exceptional and extremely unusual hardship have been totally overlooked and others have been seriously mischaracterized, we conclude that an error of law has occurred. Let me ask you this, taking Contreras into consideration. Contreras speaks about salient facts that were in the psychologist's report there. Are there salient facts in the psychologist's report here? Absolutely. In fact, there are more salient facts in the report in this case than there actually were in Contreras. So what are those facts? In Contreras, the court said that the board overlooked a psychological report assessing the child's mental health status. What they overlooked in this case was a psychological report discussing the child's mental health status, but not only that, discussed his medical condition and maybe most importantly... But the board itself does note this, and it says, all right, we identify what those things are, adjustment disorder, unspecified, and certain other problems, and we determine that that wouldn't change our view. In Contreras, the board again referenced the report in one sentence, and the decision said that's not even close to being adequate. In this case, that's the only sentence... What would you do? What would you do? So you read the report, you look at it, you identify what it says, and then you reach basically a judgment about it, but what would the explanation look like? Not in one sentence, Your Honor, and that's exactly what Contreras said. That's what the board did in Contreras. They utilized one sentence without any detailed analysis. The report in this case... How do you know when it's enough? Well, you look at the report. In one sentence, this report concluded that the separation of this boy from his father, which was a psychological and psychosocial evaluation, would be catastrophic. The board doesn't address this at all. It did not address the contents of the report. One sentence, it's the exact same thing as occurred in Contreras, Judge Apran. No evaluation of what that report said at all, and it's on all fours, 100 percent on all fours with the defect in Contreras, which said that that information that was in the report is highly pertinent to whether or not the hardship standard has been satisfied. In Contreras, did the I.J. note the report at all? Here in the I.J.'s decision, I don't see that the psychological report is referenced. The I.J. did not mention it at all. And the board's first... And it was raised to the board that the I.J. ignored the report. And it was the board's first... I'm sorry. The board's first response was that, well, the immigration judge said he evaluated all the evidence. Every decision these days that comes out of the immigration judge has that line in it, where I've reviewed all the evidence even if I don't discuss it. Of course, that's in there because there's a legal obligation to consider all the evidence. And that cannot... The fact that the immigration judge makes that self-serving statement in every single case that comes out of the immigration court cannot possibly excuse the fact, the obvious fact, that it did not discuss this extremely important aspect of the decision. With respect... Yes. Well, I just wanted to get back to my first question, which is the salient facts. So I think you said, well, that report discusses the mental health status and the physical status. But, like, specifically, if we're thinking about salient facts, what is it in that report that we should be looking at? Judge, it discusses... I have the report here, and it's at, by the way, it's at page 448 of the administrative record.  I mean, it says demonstrated irritability and detrimental to uprooting his family and then catastrophic for the family. Well, it has diagnostic, DSM diagnostic evaluations. Adjustment disorder.  Problems related to other circumstances, the effect of his father's deportation and his medical reports. These things are all invaluable to the determination of whether or not the hardship standard has been reached. And there are summary and recommendations. Obviously, I can't read the report here, but we certainly ask the court to refer to it, because it clearly involves very serious, very important information that the board just completely ignored. If I can get to the second part of the second fundamental principle, the serious mischaracterization of the evidence may constitute an error of law. The agency said that this boy suffered from seasonal allergies, seasonal allergies. This boy was rushed to the hospital with an anaphylactic reaction, a life-threatening anaphylactic reaction, that thankfully he got to the hospital on time and saved his life. This is not... How many years was that before? He was four years old. And then this proceeding, he was how old? I think he was 10 at the time of the hearing, Judge. This is a grotesque mischaracterization of this boy's... Which part, the seasonal part or the... The whole thing, the seasonal allergies in particular, Judge. No one goes to the hospital, no one suffers an anaphylactic reaction from seasonal allergies. Seasonal allergies are when the pollen is heavy off the trees and you have to blow your nose and you sneeze. This boy has a number of serious, very serious, severe allergies that almost cost him his life. Seasonal allergies, he now has to carry around for the rest of his life an EpiPen. I think it's... I forget what it's called, but it counteracts the effects of anaphylaxis. Twenty-four hours a day, seven days a week, 365 days a year for the rest of his life so that if and when he does have the next attack, he doesn't die from it. These are not seasonal allergies. How does that connect to the father's presence? I just don't follow necessarily... Well, I think... The question is, is there a hardship from the father returning to Mexico? And the reason, the argument would be, well, it's a hardship because of these allergies that may require medical attention at some point in the future. Can I respond? Yes, please. The record reflects that, and I believe the report itself reflects that. The father and the son have such a bond that the father is in charge of the boy's care, and if he were not there, then there's much more likelihood that he would suffer a very serious reaction. Thank you. Thank you. One minute, please.  Dr. Lopez, do you have any questions? I do. Thank you. Thank you, Judge Montecalvo. Counsel, just picking up on Judge Montecalvo's emphasis on the saliency of the psychological report of Contreras, the mental condition of the child was very much the focus of the hardship analysis. Here, that focus seems different. If you've just been discussing the physical condition of the child and all of the physical problems he has involving the allergies and other physical conditions, that was very much the focus of your arguments throughout this process. And so the government seems to take the position that we don't have that saliency here, that the psychological report was really never, and the mental condition of the child, was really never the focus of the arguments below. Isn't that really a critical difference in this case? No, because I don't think that's accurate, Judge. And I obviously have to read the report in full to fully understand it, but there are aspects of the report, a number of them. In fact, as I say, this report may have been more impactful in this case than the report was in Contreras. There are a number of different things that this psychological report addressed that weren't in the Contreras case. The analysis of his medical issues, the analysis of the impact on the father's removal, those things are about as salient as you can get to the determination of whether or not you've satisfied the hardship standard, and they are in this report. Thank you. Thank you, Counsel. At this time, would Counsel for the Respondent please introduce himself on the record to begin? Good morning, Your Honors. Todd Cochran on behalf of the Attorney General. As this Court has recognized, incentive of review and cancellation, hardship determination should be deferential. And two of its sister circuits have recently interpreted the Supreme Court's guidance on that issue to be substantial evidence. This Court should also find the same. Let me ask you this. To make a decision here, do we have to decide this issue that I see from your briefing, you really want us to decide, but do we have to reach it in writing? I don't think so, Your Honor. I think under any incentive of review, I think the Board's decision is defensible and it should prevail here. So whether it is substantial evidence, as we have advocated, or some other incentive of review, I think the decision, the outcome is going to be the same. And regarding the merits of this petition, the agency appropriately considered all of the evidence Mr. Ortiz submitted in support of his application. It considered his testimony. It considered the medical documentation that his son suffered from allergies. As Mr. Olin mentioned, he went to the emergency room one time in 2014, and there's never been any testimony he ever had to return again. He's had to carry the EpiPen. What do you say in response to his contention? Well, what about Contreras? Contreras says, you know, you need, if you have a psychological, it was legal error not to look at the psychological report. In that case, it had salient facts that pertain to the hardship determination. Well, I think Contreras is distinguishable to this case, Your Honor. First of all, the immigration judge in this case did say that he considered all the evidence of the record, Exhibits 1 through 6. The report was part of Number 6. He says that at 111, the administrative record. Let's assume BIJ said that in Contreras. Yes, yes, I understand, Your Honor. In this case, too, at AR 147 to 48, the immigration judge discussed the psychological report with counsel, as DHS objected to the psychologist talking about some other issues, economic impacts, country conditions. And the IJ found it to be probative, quote, with respect to the hardship of the qualifying relative. That's at the hearing, right? Pardon? Is that at the hearing? That's in the hearing, Your Honor. Yes. Also at the hearing, Mr. Ortiz never discussed in any point in time the psychological report, not on direct examination, not on redirect. I believe the only question asked of him was what language his son spoke when talking with the psychologist. And that's at 164. So at the bottom, even though Mr. Ortiz himself didn't discuss the report during his testimony, the immigration judge said, I'm going to consider everything specifically discussed during the hearing testimony. So it sounds to me like you're agreeing that the psychological report contained salient facts, but that the IJ considered them. Yeah, it did contain salient facts, Your Honor, yes. The IJ did consider them. I agree with that. However, I do think, Judge Aframes, I think your point is well taken, that it's a little bit different here. In Contreras, the individual, the qualifying relative, had experienced sexual assault by classmates, and that went untreated, undealt with by the school, law enforcement. I think the parents, I'm sure, at home dealt with it, but he didn't get any other help. And he had long-ranging impacts resulting from that regarding his emotional imbalance. Here, the situation, he was diagnosed with adjustment disorder unspecified, and problems were getting to other legal circumstances regarding his father's presence in the U.S. So it's really more about a kind of forward-looking, how's he going to feel, how's he going to deal with the situation of his father's removal, not a traumatic impact in the past. Adjustment disorder unspecified is a diagnosis, right? Yes. In a similar way as to a diagnosis that you had in the Contreras report. And I am not a psychologist, so I can't tell you what that means exactly, Your Honor. But I do think it's distinguishable because the facts are much more severe. There's only this long-ranging emotional impact of the young individual in the Contreras case compared to Mr. Ortiz's son here who has the allergies issue that has been treated with the one ER visit, that killing the epipenis never had to use, which he admitted in his brief to the board, controlled with medication. And I guess this gets to this question of, so what is adjustment disorder unspecified? Some very unscientific research. It's a mental condition characterized by an excessive emotional behavioral reaction to a stressor. I guess what I'm worried about, and maybe this is for your friend, not for you, it seems almost circular in a sense. This is a stressor. This will always be a stressor. It's a terrible, terrible thing to be separated from one's parent. And yet that is in all of these cases because that's what's happening. And so it's very difficult to understand sort of how, what's the state has been extraordinary circumstance, and yet it seems like, I mean, it is a diagnosis, so we have to deal with that, but it seems like a situation that's in almost all the cases to some degree. I certainly agree with that, Your Honor. You know, the government is certainly sensitive to Mr. Ortiz's son, and any individual whose parent is being removed, they're going to have an emotional. More generally, which is, so the financial piece of this case, which seems catastrophic to me for this family, the amount of income brought in by the father in this case is a huge percentage of the family's income, and really everyone just sort of says, well, that's not really a thing. And yet it is one of the things you consider. And why is that not just more central in these cases or this case, that this family to me will be destitute if this father, under at least the circumstances they are right now, unless the mother can come up with some new way of making money? Well, I think the financial piece is part of the whole cloth that the agency has to look at. They have to look at the financial, the emotional, the impact as a whole upon the qualifying relative. And, you know, the applicant here, Mr. Ortiz, his burden is to show he would create an exceptional and extremely unusual hardship to the individual. As Your Honor pointed out, every qualifying relative someone removes is going to experience, I would assume, some kind of hardship, emotional, financial, whatever it is. And as the, you know, losing, I don't know the math, it's 65% of the income, but yet he still has a mother who's not in removal proceedings. The mother still has some income. Perhaps she can find another job. I don't know. His health insurance is paid for by the state of Rhode Island. Do all those factors together, do those all add up to exceptional and extremely unusual, which, again, is this father's burden to show? And the agency found that he didn't, and we believe substantial evidence or whatever center review the court wants to employ here supports that determination. If the court has no further questions. As to the allergies, I mean, the argument, I think, that I heard was, yes, it was six years ago, but the record evidence, as I understand it, is there were periods of time that the father is responsible for transportation and care. I think he drove him to activities and picked him up from school. So I think the idea is that we don't know when it will reoccur. And now with one parent, the possibility of this child being alone is greatly enhanced. And so should this reoccur, the danger to the child is substantial. And so did the board really grapple with what the real argument here was, which is, you know, danger from separation given the health condition. I mean, it sounds, I think it feels like, oh, allergies, we all have allergies. Okay. But that's really what's going on, and I'm not sure the board grappled with that really, or the IJ particularly effectively. Well, the government submits that they did, Your Honor. Again, they considered the cumulative landscape of everything impacting this child, the financial piece, the take him to activities, the one parent no longer being in the country. And, again, anyone that has a parent removed is going to experience some kind of hardship, emotional, financial, transportation, whatever the issue may be. But the standard is high to show it has to be an exceptional and extremely unusual. And I think, you know, most qualifying relatives have someone removed is going to experience some of those hardships, no doubt. But is this one here where he still has a parent in the country, there is still some income, he has allergies, and he has state-provided health insurance, does that add up to exceptional and extremely unusual? And the agency here from no, it does not. So I think that answers that question, I think, Your Honor. Judge Lopez, do you have any questions? I do, thank you. Counsel, I was, I guess, belabored this salient fact reference. I was somewhat surprised by your concession response, which I don't want to call it, that in the psychological report, there are facts that are salient to the hardship determination. If that's true, I mean, if that's accurate, then this case begins to look more and more like Contreras. What are the facts in that psychological report that are salient to the hardship determination, as argued by counsel? I say that because you started out by saying that there was no testimony at all about the psychological condition of the child with the hearing. It was all about the physical condition. So what are the salient facts in that report, in that psychological report? Well, I don't have the report here in front of me, Your Honor. I know that, you know, certainly the psychologist came out with the diagnosis that was presented. I think that would be salient. Since you talked about the medical issue, again, being the allergies, I think that the agency looked at that. The IJ considered the evidence, including that report, which talked about the medical issues and determined, again, the cumulative impact, including that report, was not sufficient to meet the high burden. The IJ said nothing of the psychological report that was true of Contreras. The BIA, responding to what was the counsel's legal argument about that error, the BIA drops a footnote in which they repeat that notion, that boilerplate notion that the IJ said, I evaluated all the evidence in the record. That really can't count for anything. That's just so Formal A. It doesn't really demonstrate anything. And then the only thing else it says is they acknowledge the report, and then they simply say in a very summary fashion, we conclude that the respondent is not sure the immigration judge overlooked evidence that they had of a condition affecting their son established since he would experience exceptional and extremely unusual hardship upon the respondent. Why? That, too, is quite a summary statement. If the psychological report really includes information that is critical to the hardship determination, which was the case in Contreras, that hardly can be viewed as an analysis of that report. It's just treated in a very simple fashion. Isn't that a problem for you? I don't think so, Your Honor. I think, first off, the immigration judge had the discussion on the record with counsel about the report and acknowledged the report in the record and said, I'm going to consider everything. I think there's also a presumption that the agency will consider all the evidence before it. I think also the fact that Mr. Ortiz himself didn't find the report important enough to discuss at all, let alone in detail during his testimony, I think also diminishes the importance of it. So when the immigration judge was looking at, again, the entire cloth, the whole panoply of evidence here of which the report was a portion of it, yes, but also Mr. Ortiz's testimony, the medical records about the allergies, I think in that sense the IJA did adequately consider the report and the Board did as well, Your Honor. Thank you. Thank you. If the Court has no other questions, the Government will rest until it's brief. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Petitioner please reintroduce himself on the record? He has a two-minute rebuttal. Thank you. Your Honor, this is Randy Olin from Mr. Ortiz Trejo. Let me say I respect Mr. Calkin for acknowledging that there are salient facts in the report. There obviously are. But I'm confused by how he can know that the immigration judge looked at it when there's not a syllable of analysis or any evidence at all that he did so. I also want to, just to follow up on the egregious mischaracterization of the evidence, the immigration judge and the Board agreed that because this boy had not had another life-threatening anaphylactic shock reaction, that he was almost positively very unlikely to ever do so again. Where does that come from? That's like saying someone who has a massive heart attack and then doesn't have one for a few years will never have one again. It's, again, a ridiculous mischaracter. Pardon my, I don't mean to string it to hyperbole. But it's, I don't understand how they can possibly make a determination like that. If I could just say a word or two about the government's attempts once again to adopt a heightened standard of reviews, substantial evidence standard, let me just point out a couple of things. Number one, both the Immigration and Nationality Act and the Administrative Procedures Act have statutory provisions that say that the substantial evidence standard applies to facts. What we're dealing with- We definitely have cases like Elzeband, which was about the bona fides of a marriage, where the issue was, the court said after Wilkinson that this is a question of law that we can consider, but it shades towards the facts. And then the standard of review adopted in that case was substantial evidence. This seems like the same thing. So you get review because the Supreme Court said so. This is a mixed question. But then we said it's one that shades towards the facts. And that led us to substantial evidence. And I actually don't see why this is different. The application of the facts to the hardship standard is a question of law. After Loper-Bright, the standard of review should be much closer to de novo review than it would be to substantial evidence. We can't ignore the effect of Loper-Bright. This is a mixed question. That's what makes it a question of law reviewable by this court. But it's still a mixed question. Do you agree with that? I do. But the mixture is you take the facts, you apply them to the standard. The Supreme Court has said when they're mixed, you then have to make a decision about are they mixed more towards the facts or are they mixed more towards the law. And this seems mixed more towards the facts. It's highly fact-intensive, isn't it? It is. But I don't see where that would cause one to take a standard of review that applies solely to facts and apply it to a question of law, which is what this court has repeatedly said, that the final question is a question of law. Thank you. Thank you, Your Honor. One minute, Mr. O'Leary. Judge Lopez? No, I'm fine. Okay. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.